UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Deborah Johnson, Eddie Johnson II, KJ, and Eddie Johnson III,<br>　　　　　　Plaintiffs<br><br>　　v.<br><br>ASK Trucking, LLC, and Aleksandr Isserovich,<br>　　　　　　Defendants | Case No. 09-4058 |

## ORDER and OPINION

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court is Defendants' Motion for Partial Summary Judgment and for Advanced Ruling on Evidence and In Limine (#32). This motion is fully briefed, and I have carefully considered the arguments and evidence submitted by the parties. As explained herein, the Motion for Partial Summary Judgment is denied and the Motion for an Advanced Ruling is granted in part, denied in part and moot in part.

## JURISDICTION

The plaintiffs, all individuals, were at all relevant times citizens and residents of the State of Kansas. Defendant Aleksandr Isserovich, was at all relevant times a citizen and resident of either New Jersey or New York. Defendant ASK Trucking LLC is a limited liability company under the laws of New Jersey. At all times, it had only one member, Saso Petrovski, who was a citizen of the State of New Jersey. The amount in controversy exceeds $75,000. See, Supplemental Jurisdictional Statement (Doc. #37). This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 over the subject matter

of this dispute.

## SUMMARY JUDGMENT GENERALLY

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092 (1987), and construing any doubts against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Trotter v. Anderson, 417 F.2d 1191 (7th Cir. 1969); Haefling v. United Parcel Serv., Inc., 169 F.3d

494, 497 (7th Cir.1999).

**UNDISPUTED FACTS**

Defendant Aleksandr Isserovich was at the pertinent time a truck driver employed by ASK Trucking LLC. (herein, "ASK"). Isserovich had a commercial driver's license[1] in December of 2008, and had had one since 2003. The record includes his testimony about several speeding violations and a red-light violation prior to his employment with ASK, violations of which he informed ASK at the time of his hire in 2008. In addition, his driving record reveals 8 traffic violations[2] between 2003 and the date of his hire by ASK in 2008. ASK was aware of these violations when it hired Isserovich in 2008. Isserovich received no safety training by ASK before he began driving for the company.

After his hire by ASK, Isserovich was cited for 3 violations of the Federal Motor Carrier Safety Regulations ("FMCSR") on October 23, 2008. He was cited for "numerous" other violations of FMCSR's, including at least one violation for falsifying his log book. He was apparently not disciplined in any way by ASK for these infractions.

On the night of December 19, 2008, Isserovich was driving west on Interstate 80 in Henry County, Illinois. The roadway was covered with snow, and the road conditions were poor. At one point, about an hour and a half or less before the incident giving rise to this lawsuit, Isserovich had stopped at a truck stop due to the poor road conditions. By the time of the accident, however, he

---

[1] This fact, along with the following facts in this paragraph are immaterial according to Defendant. They are included in the recitation of facts because their materiality is at issue in the pending motion.

[2] His driving record reveals the following: citations for failure to obey sign or traffic control device (3 separate violations); careless driving in a commercial vehicle resulting in an accident; speeding (2 violations); improper lane usage; and failure to use seatbelt; as well as involvement in an accident.

testified that he had good visibility and his traction was not adversely affected by the snow on the highway.

As Isserovich proceeded west at about 35-40 miles per hour, he testified that he observed a car, facing him, on the right shoulder of his side of the interstate highway. According to Isserovich, he slowed down as he approached that vehicle, but he was unable to avoid hitting it because the vehicle tried to make a u-turn back onto the roadway directly in front of him.

Isserovich's version of the accident is directly contradicted by the testimony of Eddie Johnson, who stated that his car was completely stuck in the snow in an almost-sideways position on the roadway, not on the shoulder. He stated that he had not moved his car from that position when it was struck broadside by Isserovich. In the car were the Plaintiffs, Deborah Johnson and Eddie Johnson II, and their minor children K.J. and Eddie Johnson III. Each of the Plaintiffs suffered injury.

The Johnson's filed this lawsuit[3] on August 11, 2009. Before the suit was filed, ASK Trucking had been liquidated. Other than the fact that ASK Trucking was aware of this accident and the Johnson's assertion that the company was at fault, there were no other pending transactions or claims against the company at that time.

The complaint consists of 12 counts, as follows:

- Counts I, IV, VII and X are respectively the "Negligence" claims of Deborah Johnson, Eddie Johnson II, K.J, and Eddie Johnson III against *both* of the Defendants, asserting Isserovich's negligent operation of the truck.

---

[3]On Nov. 2, 2010, Defendant filed their answer. They included in their answer a counterclaim against Eddie Johnson II for contributory fault. That counterclaim is not at issue in this Order.

- Counts II, V, VIII[4], and XI are respectively the "Negligence" claims of Deborah Johnson, Eddie Johnson II, K.J. and Eddie Johnson III against ASK Trucking, alleging negligent hiring and retention of Isserovich, negligent failure to train and supervise him, and failure to have adequate policies and procedures for training and for safety.

- Count III is Eddie Johnson II's claim for the loss of consortium of his wife against the 2 defendants based on the negligence asserted in Counts I and II.

- Count VI is Deborah Johnson's claim for loss of consortium of her husband against the 2 defendants based on the negligence asserted in Counts IV and V.

- Count IX is the parents' claim seeking reimbursement for the medical expenses incurred by K.J. and for the loss of their consortium with her and for Deborah's lost wages due to her caring for K.J.

- Count XII is a claim for punitive damages against the 2 defendants.

The specific allegations of negligent conduct against Isserovich are that he "caused, allowed and permitted" the semi to collide with Plaintiffs' vehicle; he failed to keep a careful lookout; he operated his tractor trailer too fast for conditions; he was going too fast to stop within his range of visibility; he knew or should have known that he would collide with the car in time to stop, but he failed to do so; and he operated the tractor trailer in a careless and reckless manner.

The specific allegations of negligent conduct by ASK are that it failed to properly train and supervise Isserovich; it was negligent in hiring Isserovich; it negligently retained Isserovich; it failed to have adequate training policies and procedures for its drivers; and it failed to have adequate safety policies and procedures.

Defendants have now filed the instant motion for partial summary judgment. There are 3

---

[4]Counts VIII actually states that it is based on the factual allegations set forth in Counts I and VII but then goes on to allege the negligence of ASK Trucking in hiring, training etc of Isserovich. This appears to be a scrivener's error and for purposes of this Order will be treated as such. The same is true for Count XI.

aspects to the pending motion. Defendants first ask for judgment as to Counts II, V, VIII, XI, and XII as well as those parts of Counts III, VI, and IX that are based on Counts II, V, VII, and XI. They assert that, under Illinois law, these claims are redundant of the other claims. In addition, defendants assert that Illinois law prohibits imposition of punitive damages under the circumstances of this case. These two issues - redundancy and punitive damages - are intertwined and will be considered together.

Finally, Defendants ask for two evidentiary rulings: that portions of Plaintiffs' expert's testimony be stricken as speculative, and that evidence of ASK's failure to maintain certain records be excluded.

## DISCUSSION

### *REDUNDANCY AND PUNITIVE DAMAGES*

Defendant ASK Trucking acknowledges that Isserovich was its employee and was acting within the scope of his employment at the time of this accident. As such, ASK also concedes that it is vicariously liable for negligent acts of Isserovich. ASK asserts, however, that its own liability is limited to vicarious liability; it cannot exceed the liability of the employee. Hence, according to ASK, all of the claims based on ASK's own misconduct are redundant of the *respondeat superior* claims.

In support of that proposition, ASK relies on Gant v. L.U. Transport, Inc., 770 N.E.2d 1155 (Ill.App.2002). In Gant, the issue was "whether a plaintiff who is injured in a motor vehicle accident can maintain a claim for negligent hiring, retention and entrustment against an employer where the employer admits responsibility for the negligent conduct of the employee under a *respondeat superior* theory." The Gant Court was not only required to reconcile Lockett v. Bi-State Transit Authority, 445 N.E.2d 310 (Ill.1983) with Ledesma v. Cannonball Inc., 538 N.E.2d 655 (Ill.1989) and Neff v. Davenport Packing Co., 268 N.E.2d 574 (Ill. 1971), but also to consider the impact on Neff of the

6

adoption of comparative negligence by Illinois; see Alvis v. Ribar, 421 N.E.2d 886 (1981).

In Neff, the State's Supreme Court adopted the majority view that once an employer admits vicarious responsibility for the negligence of its employee, a plaintiff may not proceed against the employer on another theory of imputed liability such as negligent entrustment or negligent hiring. Neff, 268 N.E.2d at 575 and cases cited therein. Ledesma reaffirmed the Neff holding and its rationale. 538 N.E.2d 655. The plaintiff in Gant, however, argued that Ledesma had been wrongly decided because it had not considered the applicability of Neff in a comparative negligence jurisdiction.

The Gant Court reviewed cases since Ledesma and carefully discussed the reason for the rule adopted in Neff and affirmed in Ledesma. The Court concluded:

> The doctrine of *respondeat superior* and the doctrine of negligent entrustment are simply alternative theories by which to impute an employee's negligence to an employer. Under either theory, the liability of the principal is dependent on the negligence of the agent. If it is not disputed that the employee's negligence is to be imputed to the employer, there is no need to prove that the employer is liable. Once the principal has admitted its liability under a *respondeat superior* theory, such as in the instant case, the cause of action for negligent entrustment is duplicative and unnecessary. To allow both causes of action to stand would allow a jury to assess or apportion a principal's liability twice. The fault of one party cannot be assessed twice, regardless of the adoption of comparative negligence.

Id. at 1160.

The Gant Court went on to address and reject the contention that its holding - and those of Neff and Ledesma - were inconsistent with the holding in Lockett. As the Court noted, Lockett dealt with willful and wanton conduct on the part of the employer, not negligent conduct. Because the case before it involved negligence, not willful and wanton conduct, the Gant Court concluded: "Neff is apposite; Lockett is inapposite." Id. at 1160.

Plaintiffs do not directly respond to the argument that the case law above bars all of their

7

claims against ASK that are not based solely on *respondeat superior*. Plaintiffs' response addresses, in separate sections, the claim for punitive damages against Isserovich, the claim for punitive damages against ASK, and Defendants' request for an advanced ruling on evidence. Defendants take this failure to respond to the argument "to mean that Plaintiffs concede that if the Court does not permit their claim for punitive damages to proceed against ASK, then [the counts] that are based on the claims of ASK's negligence ... should be dismissed as duplicative."

The issue of punitive damages will be considered first, and the result will guide the Court in resolving the challenge of redundancy.

Plaintiffs seek punitive damages against both Isserovich and ASK Trucking. Illinois law governs the issue of whether these claims should be stricken from the prayer for relief. Under Illinois law, "while the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law." Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems, 428 F.3d 706, 714 (7th Cir. 2005). See also, Knierim v. Izzo, 174 N.E.2d 157 (Ill.1961).

Punitive damages may only be awarded where torts have been committed with "fraud, actual malice, deliberate violence or oppression", or when the defendant has acted "with such gross negligence as to indicate a wanton disregard of the rights of others. Id., citing Brandon v. Anesthesia & Pain Mgmt. Assocs. Ltd., 277 F.3d 936,946 (7th Cir. 2002)(interpreting Illinois law). See also, Kelsay v. Motorola Inc., 384 N.E.2d 353, 359 (Ill.1978).

As far back as 1958, the Illinois Supreme Court has recognized that, if the conduct of a driver demonstrates disregard of a known or obvious danger or a reckless disregard for the safety of others, punitive damages may be imposed. In Hering v. Hilton, 147 N.E.2d 311 (Ill.1958) the Court noted that

8

a driver need not have intended that harm ensue, nor even known that there would be a collision. "[I]t is sufficient if he had notice which would alert a reasonable man that substantial danger was involved, and that he failed to take reasonable precautions under the circumstances." Id. at 315.

In Hering, the conduct at issue was the drivers' failure to keep a proper lookout. The Court rejected the notion that this was simply an error in judgment:

> Labeling the conduct 'an error of judgment' does not free it from the taint of willful and wanton misconduct but merely begs the question for practically all such collisions could be attributed to errors of judgment, and the query in each case is whether such error of judgment was in disregard of dangers which should have been apparent to a reasonable man."

Id.

In the case before this Court, Defendants assert that there is no evidence that the accident was the result of anything other than simple negligence. That assertion is based on Isserovich's description of the accident, which is of course directly contradicted by the Plaintiffs' description of this accident. It ignores Isserovich's own testimony that the road was snow covered and that he himself had stopped earlier because the roads were hazardous. He also testified that neither his vision nor his traction were impaired by the weather, which raises questions about his attention and his efforts to stop. As noted, this testimony is disputed, but the evidence is there from which a juror might conclude that Isserovich's conduct was willful and wanton or reckless. In other words, the disputed evidence just mentioned is sufficient to allow a claim of punitive damages against Isserovich to go to the jury for determination whether it was reckless or willful and wanton.

The analysis is different for ASK Trucking. Under Illinois law, if the liability of a corporation is premised on a theory of *respondeat superior*, imposition of punitive damage is "narrowly circumscribed." Kennan v. Checker Taxi Co., 620 N.E.2d 1208 (Ill. App.1993), citing Mattyasovoszky v. West Towns Bus Co., 330 N.E.2d 509 (Ill.1975). The Mattyasovoszky Court adopted the

9

Restatement (Second) of Agency (1958), section 217C, which is referred to as the "complicity rule." This Rule prohibits imposition of punitive damages against a master for conduct of an agent unless certain circumstances are present. As is pertinent here, one set of circumstances involves an agent who was unfit and an employer who was reckless in employing him. 330 N.E.2d at 512. See also, <u>Lockett v. Bi-State Transit Authority</u>, 445 N.E.2d 310 (Ill.1983).

One of Plaintiffs' theories in this case is that Isserovich was unfit to drive a semi and that ASK Trucking was reckless in employing Isserovich, in supervising him, and in retaining him. In support of those claims, Plaintiffs reference Isserovich's driving history, which they characterizes as a history of "irresponsible and dangerous driving." They further allege and argue that ASK should have known and in fact did know of this history but failed to discipline him or take any steps to implement new training or safety policies.

Whether Isserovich was unfit as a driver and whether ASK was reckless or willful and wanton in employing him, retaining him, and supervising him are conclusions that must be drawn from the evidence. Whether Isserovich's and/or ASK's conduct rose to the level of reckless or willful and wanton conduct is a question that must go to a jury.

I therefore conclude that there is sufficient evidence in this case to send to the jury questions of punitive damages as to both Defendants. That conclusion leads inevitably to the second conclusion that the claims against ASK based on its own conduct - hiring, supervision, retention, and policies - are not redundant. If ASK's conduct is found to be reckless or willful and wanton, then to paraphrase the <u>Gant</u> Court, <u>Lockett</u> is apposite; <u>Neff</u> is inapposite. <u>Neff</u> only applies to simple negligence, not to recklessness or willful and wanton misconduct, and Lockett is clear that an employer can be held liable for such enhanced misconduct.

Accordingly, the Motion for Summary Judgment is denied.

*EVIDENTIARY RULINGS*

Defendants first ask the Court to exclude as irrelevant Plaintiffs' expert Michael England's opinions regarding potential liability of ASK. Expert testimony is admissible if it is based upon sufficient facts or data, and is the product of reliable principles and methods that have been reliably applied to the facts of the case. Fed.R.Evid. 702. As is true with any other type of testimonial evidence, expert testimony must also be relevant. Fed.R.Evid. 402.

In Mr. England's deposition, he testified about various theories[5] of ASK negligence. A number of those theories are challenged by Defendants. First, England concluded that ASK was negligent because it had no adequate drug or alcohol testing program. Plaintiffs assert that the lack of such policies is evidence of ASK's "apparent blatant disregard for the requirements imposed by the FMCSR." There is no evidence whatsoever that Isserovich was under the influence of alcohol or drugs at the time of this accident or even at any time prior to this accident.

In the absence of any evidence linking drug and alcohol policies (or the lack thereof) to the factors that may have led to this accident, this opinion is simply not relevant. This opinion testimony is excluded.

England also opined that lack of an adequate vehicle maintenance program shows negligence on the part of ASK. When questioned, he admitted that he had "no specific evidence that the truck wasn't properly maintained. But a properly maintained vehicle is less likely to be involved in a

---

[5]Plaintiffs response affirmatively states that they will not be introducing evidence or opinion of cell phone usage by Isserovich or about Petrovski's trip out of the country following this accident. To the extent that the motion seeks a ruling on these two matters, it is therefore moot.

11

collision." His opinion was based on the fact that the truck driven by Isserovich at the time of the accident had been cited on November 26, 2008, just 3 weeks before this accident, for inoperative brake lamps and tail lights on trailer, 2 out of 10 brakes out of adjustment, inoperative turn signal, missing hose, excessive oil leaks and exhaust leaks; defective rear windshield wiper; damages or discolored windshield, anti-lock brake system malfunction indicator light on, air leak, brake hose or tubing chafing between axles, and left bright headlamp inoperable.

Defendants respond that an Illinois State Police inspection was conducted on December 19, presumably immediately after the accident. This inspection found "no violations" at that time. Defendants rely on that inspection as proof that all of the cited maintenance issues had been corrected by December 19.

What a post-accident inspection by the State Police involves is not revealed to the Court. Was the inspection conducted on the scene by a police officer? Or was the truck towed to another facility and given a thorough testing by a knowledgeable mechanic? The answers to such questions cannot be ascertained from the record before this Court. Defendant is unable to provide any documentary proof of repairs because (as discussed further below) all internal company documents were destroyed when ASK was liquidated. The weight to be accorded to the State Police inspection and the inference that might be drawn from are issues not to be decided on summary judgment. These are disputed matters for a jury to determine.

Defendants also assert that, even if the State Police inspection is not authoritative proof of remediation, all but one of the earlier cited deficiencies are wholly irrelevant to the accident. Matters such as windshield wipers and turn signals have nothing to do with causation of the accident, according to Defendants.

There are several problems with Defendants' position. First, more than one of the identified deficiencies could be causally related. Surely the fact that 2 out of 10 brakes were found out of adjustment - the one deficiency conceded by Defendants - could have played a part. But so too could the fact that the anti-lock brake malfunction light was on, or that a brake hose was chafing between the axles, or that the windshield was damaged or discolored.. Neither the Court nor the jury is a mechanic. The parties will have to produce testimony at trial that will sort out this type of question for the finder of fact.

More importantly, however, this evidence is being offered to show that ASK was reckless or willful and wanton in not maintaining this particular truck. The multiple citations are surely evidence of this theory.

Next Defendants assert that England should be barred from testifying that ASK did not conduct a proper background check on Isserovich before he was hired. In so opining, England listed a number of things[6] that a background check would have revealed. Upon questioning, England also conceded that if a background check had been conducted and those things had been discovered, there would have been no legal bar to ASK's hiring of Isserovich.

Plaintiff responds that compliance with FMCSR regulations does not necessarily negate implications of negligence; those regulations simply set for the minimum safety requirements. Compliance with statutes and safety regulations is not conclusive evidence on the question of

---

[6]Some of those factors include Isserovich's driving history. In Lockett, the court allowed evidence of a bad driving record to come in *against the employer only*, with a cautionary instruction that the record could not be used against the driver to prove that he had acted in a particular way on the occasion in question. 445 N.E.2d at 314. The same result will obtain here. The parties shall include in proposed jury instruction a cautionary instruction to be read to the jury at the appropriate time.

negligence. Vancura v. Katris 345 Ill. Dec. 485, 500 (Ill.2010). Here, the question is whether, knowing what it did about him, ASK's hiring of Isserovich was actionable. England's testimony about the background check will be allowed.

England also testified about the lack of a company policy governing the length of time a driver may be on the road without rest. At the time of this accident, Isserovich had been driving for less than 2 hours. He had slept for 9-10 hours shortly before he began driving. England's testimony that ASK had an inadequate policy regarding the maximum driving time or minimum sleeping time is wholly immaterial to this case. He may not testify about this matter.

Next Defendants ask for exclusion of evidence regarding an allegedly-inadequate post-accident investigation by ASK. This accident, say Defendants, was obviously not caused by any such failure. Plaintiffs once again assert that it is evidence of ASK's "apparent blatant disregard for the requirements imposed by the FMCSR." Once again, in the absence of any possible causal link between the accident and this failure, the evidence is irrelevant and will not be allowed.

Finally, Defendants ask the Court to exclude evidence that ASK failed to maintain certain records, because by the time this lawsuit was filed, it was not required to do so. This assertion is based on ASK's liquidation between December 28 2008 and February 2009. The pertinent CFR, according to ASK, states in pertinent part, "The records referred to in the regulations in this part may be destroyed after business is discontinued and the company is completely liquidated. The records may not be destroyed until dissolution is final and all pending transactions and claims are completed..."

Plaintiffs point to the word "claims" in that regulation, noting that ASK was a two-truck business that shut down immediately after this accident. ASK was or should have been aware that Plaintiffs were injured and would be asserting a claim against it. Any assertion to the contrary cannot be a good faith assertion, according to Plaintiffs. Defendants respond that the regulation does not say

"potential claims" or "possible claims." It simply says "claims."

Once again, compliance with the regulation does not resolve the question before the Court. While there is no general duty to preserve evidence, such a duty may arise "if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action." Boyd v. Travelers Ins. Co., 652 N.E.2d 267, 271 (Ill.1995). That legal statement must color interpretation of the regulation's use of the word "claims." While there were no active claims against ASK at the time of its dissolution, a reasonable person should have foreseen that a claim was forthcoming. The speedy dissolution of ASK, following so closely on the heels of this accident, along with the nearly immediate destruction of documents that might well have been pertinent to this case, is at the very least some evidence of ASK's knowledge of a claim that remained unresolved at the time the records were destroyed. This evidence is admissible.

## CONCLUSION

The motion for summary judgment is denied in its entirety. The motion for evidentiary ruling is granted in part, denied in part and moot in part. This case remains set for a status conference on April 11, 2011, at which time a final pretrial conference and jury trial will be scheduled.

ENTERED ON March 25, 2011

                              s/ John A. Gorman

                              JOHN A. GORMAN
                       UNITED STATES MAGISTRATE JUDGE